UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Cheria Foggs, individually and on behalf of all others similarly situated, | 1:23-cv-01879 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Radienz Living Chicago, LLC, | Jury Trial Demanded |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1. Radienz Living Chicago, LLC ("Defendant") manufactures Ajax detergent marketed as sufficient for a specified number, i.e., 40, loads of laundry ("Product").



2. Though the purchaser is drawn to the large print number of loads of laundry they expect the Product will allow them to do, only the back of the container reveals usage instructions which distinguish between "Medium" and "Large or Heavily Soiled" loads of laundry.

3. Based on these small print directions, amidst a wall of multi-colored graphics, icons, warnings and ingredients, purchasers are advised that medium loads are based on "fill[ing] [the cap] halfway between lines 1 and 2," while large loads require "fill[ing] [the] cap to line 3."



4. Consumers understand "loads" in the context of laundry to refer to full units, in the same way as other metric and imperial units of measurement, such as meters, liters, grams, feet, ounces and pounds.

2

5. This understanding was confirmed by the Department of Energy, which analyzed the direct relationship between capacity and maximum load by referencing how washing machine directions generally tell users to load them "to the point that the clothes container is loosely filled."

6. It determined that the term "full load" is synonymous with "load" and widely understood by consumers, washing machine manufacturers and detergent companies as referring to a load size that takes advantage of the whole usable capacity of the clothes washer.

7. These facts are supported by "[U]npublished data from [a leading detergent manufacturer] [which] indicate[d] that [64 percent of] North American households" do large or very large loads of laundry, while only 21 percent do medium loads.[1]

8. A survey by California utility companies replicated these findings, with 59 percent or 180 (of 310) laundry loads either large or very large, more than double the loads of laundry characterized as medium.[2]

**Table 5: Relative Load Sizes**

| Load Size | Response Count (# loads reported) | Percentage of Total |
|---|---|---|
| Very small | 8 | 3% |
| Small | 34 | 11% |
| Medium | 88 | 28% |
| Large | 138 | 45% |
| Very Large | 42 | 14% |
| Total | 310 | 100% |

Source: PG&E 2016 Survey.

---

[1] Sabaliunas, Darius, et al. "Residential energy use and potential conservation through reduced laundering temperatures in the United States and Canada," Integrated Environmental Assessment and Management: An International Journal, 2.2 (2006), 142-153; Jay S. Golden, et al. "Energy and carbon impact from residential laundry in the United States," Journal of Integrative Environmental Sciences, 7.1 (2010), 53-73.

[2] Comment, California Investor-Owned Utilities ("CA IOUs"), Energy Conservation Program: Test Procedures for Residential and Commercial Clothes Washers, 85 Fed. Reg. 38106 (proposed rule, June 25, 2020) (to be codified at 10 C.F.R. Parts 430 and 431), Docket No. EERE-2016-BT-TP-0011.

3

9. The tendency towards filling up a washing machine is not limited to the United States.

10. A 2015 study of over 2,000 Europeans found that roughly 74 percent used the full capacity of their washer.

11. Consumer laundry habits in favor of larger loads has increased over the past ten years, as they have become aware of the effects of energy consumption on climate change.

12. CNN surveyed laundry and environmental experts, who recommended that Americans "save up [their] dirty clothes and wash them in a few big loads versus several smaller loads" to mitigate the environmental impact.[3]

13. The majority of Americans who take advantage of the whole usable capacity of their clothes washer will not be able to do 40 loads of laundry, because if they "fill[s] [the] cap to line 3" for "large" loads, they can only do that 20 times, compared to if they "fill [the cap] halfway between lines 1 and 2," which would deliver the 40 loads promised on the front label.

## Jurisdiction and Venue

14. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

15. The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

16. Plaintiff is a citizen of Illinois.

17. Defendant is a citizen of Delaware and Illinois based on the citizenship of its member, Wind Point Partners, Inc.

---

[3] Leah Kirts, How to Wash Laundry Sustainably, According to Experts, CNN Underscored, August 23, 2022.

4

18. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

19. The members of the class Plaintiff seeks to represent are more than 100, because the Product is sold with the representations described here in thousands of stores, such as grocery stores, dollar stores, big box stores, drug stores, warehouse club stores, convenience stores and online, in the States Plaintiff seeks to represent.

20. Venue is in this District with assignment to the Eastern Division because a substantial part of the events or omissions giving rise to these claims occurred in Cook County, including Plaintiff's purchase and use of the Product, reliance on the identified statements, and subsequent awareness these were false and misleading and Plaintiff resides in this county.

Parties

21. Plaintiff Cheria Foggs is a citizen of Chicago, Cook County, Illinois.

22. Defendant Radienz Living Chicago, LLC is a Delaware corporation with a principal place of business in Illinois.

23. Plaintiff purchased the Product at one or more stores of the type consumers buy household staples in, including dollar stores, grocery stores, convenience stores and/or drug stores between 2021 and 2023, among other times.

24. Plaintiff read and relied on the number of loads on the front label, i.e., "40," which she believed was relevant to her as a typical American who does full or large loads of laundry.

25. Plaintiff did not read the back of the container which distinguished between medium and large loads, and was unaware that to do the number of loads of laundry on the front label required that those loads be "medium."

26. Plaintiff was unable to do the number of loads of laundry promised by the front label

number, as she was only able to do no more than half as many as this number.

27. As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than $4.99 for 60 oz, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

28. Plaintiff bought the Product at or exceeding the above-referenced price.

29. Plaintiff paid more for the Product than she would have had she known she would only be able to do half as many loads of laundry, or would not have purchased it.

30. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

31. Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, requirements, features, and/or components.

32. Plaintiff intends to, seeks to, and would purchase the Product again when she can do so with assurances the number of loads of laundry it can be used for is consistent with her understanding and how most consumers like her do laundry.

33. Plaintiff is unable to rely on the labeling of not only of this Product, but other detergents which make prominent claims about the number of loads of laundry they can be used for, because she will be unsure of whether those representations are truthful.

34. If Defendant was compelled to truthfully disclose the number of loads of laundry the Product could be used for, Plaintiff would have more confidence in the promises of other detergents which make such statements.

<u>Class Allegations</u>

35. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Illinois Class:** All persons excluding Judges who may hear this action, their immediate families and direct staff, in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in the States of South Dakota, Wyoming, Idaho, Alaska, West Virginia, Arkansas, North Carolina, and Utah who purchased the Product during the statutes of limitations for each cause of action alleged.

36. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

37. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

38. Plaintiff is an adequate representative because her interests do not conflict with other members.

39. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

40. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

41. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

42. Plaintiff seeks class-wide injunctive relief because the practices continue.

Illinois Consumer Fraud and Deceptive Business Practices Act
("ICFA"), 815 ILCS 505/1, *et seq.*
(Illinois Class)

43. Plaintiff incorporates by reference all preceding paragraphs.

44. Plaintiff saw and relied on the label which stated she could do the specified number of loads of laundry, and like most Americans, she did not do medium loads but at least large loads, which meant she could only do half as many.

45. Defendant's false, misleading, and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions, because value is important to consumers like Plaintiff.

46. Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts
(Consumer Fraud Multi-State Class)

47. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

48. The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

49. Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, which they did, suffering damages.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose
and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

50. The Product was manufactured, identified, marketed, and sold by Defendant and

8

expressly and impliedly warranted to Plaintiff that she could do the specified number of loads of laundry, and like most Americans, she did not do medium loads but at least large loads, which meant she could only do half as many.

51. Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions, and targeted digital advertising.

52. Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires, such as the majority of Americans who seek value for their money and who do not do medium loads of laundry.

53. Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant that she could do the specified number of loads of laundry, and like most Americans, she did not do medium loads but at least large loads, which meant she could only do half as many.

54. Defendant's representations affirmed and promised that she could do the specified number of loads of laundry, and like most Americans, she did not do medium loads but at least large loads, which meant she could only do half as many.

55. Defendant described the Product so Plaintiff believed she could do the specified number of loads of laundry, and like most Americans, she did not do medium loads but at least large loads, which meant she could only do half as many, which became part of the basis of the bargain that it would conform to its affirmations and promises.

56. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

57. This duty is based on Defendant's outsized role in the market for this type of Product, owners of the Ajax brand, which consumers have associated with value and quality for decades.

58. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

59. Plaintiff provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's warranties.

60. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

61. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

62. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed to Plaintiff as if it could do the specified number of loads of laundry, and like most Americans, she did not do medium loads but at least large loads, which meant she could only do half as many.

63. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because she expected that it could do the specified number of loads of laundry, and like most Americans, she did not do medium loads but at least large loads, which meant she could only do half as many, and she relied on Defendant's skill and judgment to select or furnish such a suitable product.

<u>Negligent Misrepresentation</u>

64. Defendant had a duty to truthfully represent the Product, which it breached.

65. This duty was non-delegable, and based on Defendant's position, holding itself out as having special knowledge and experience in this area, as custodians of the Ajax brand, which Americans have trusted for over 50 years.

66. Defendant's representations regarding the Product went beyond the specific representations affixed to package, as they incorporated its extra-labeling promises and commitments to quality, as one of the oldest and trusted brands of detergent.

67. These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

68. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

69. Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, her purchase of the Product.

### Fraud

70. Defendant misrepresented and/or omitted the attributes and qualities of the Product to Plaintiff, because she expected that it could do the specified number of loads of laundry, and like most Americans, she did not do medium loads but at least large loads, which meant she could only do half as many.

71. As one of the largest sellers of detergents, Defendant is or should be aware of how consumers do laundry and that most of them do large or very large loads.

72. Moreover, the records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity or deception, through statement and omission, of the representations.

73. Defendant knew of the issues described here yet did not address them.

74. Defendant's fraudulent intent is evinced by its knowledge that the Product could not be used for the highlighted number of large loads of laundry, but at most half as many as that number.

## Unjust Enrichment

75. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3. Awarding monetary, statutory and/or punitive damages and interest;

4. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

5. Other and further relief as the Court deems just and proper.

Dated: March 26, 2023

Respectfully submitted,

/s/ Spencer Sheehan
Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com